IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Christopher Coleman, | ) | C/A No.: 3:08-3675-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Chauncey Smith; and Richland County, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on the motion [dkt. # 27] of defendants Chauncey Smith ("Officer Smith") and Richland County for summary judgment against plaintiff Christopher Coleman ("Coleman"). The parties have fully briefed the motion and the court heard oral argument on February 4, 2010, where the motion was taken under advisement. This order serves to announce the ruling of the court.

I.  Factual and Procedural Background

On September 28, 2006, Coleman attended a University of South Carolina football game at Williams-Brice Stadium with two friends, Demetrick Smith ("Demetrick") and Mark Stanley ("Stanley"). Prior to the game, the group consumed several beers apiece, though Stanley may have consumed more than Demetrick or Coleman. At some point during the game, Officer Smith approached the group, allegedly responding to a complaint from a group of women seated nearby, and escorted Demetrick out of the game. Approximately fifteen minutes later, Stanley and Coleman approached Officer Anthony Bixler ("Officer Bixler"), who Stanley knew from college, and inquired about Demetrick being ejected from the game.

(Coleman Dep. 34:22–35:23.) Officer Bixler asked Stanley and Coleman who escorted Demetrick out of the game and they pointed to Officer Smith, who then approached and joined the conversation. (Coleman Dep. 37:9–13.) Stanley then asked Officer Smith why he ejected Demetrick. (Coleman Dep. 37:25.) After approximately five minutes of conversation, Officer Smith indicated that he had heard enough and that he intended to eject Stanley from the stadium. Coleman then exclaimed "wait a minute, man," and Officer Smith ejected him from the stadium as well. (Coleman Dep. 40:11–14.)

Stanley and Coleman were escorted out of the stadium in single file, with Officer Smith holding Stanley's arms behind his back, and Officer Blackmon and Coleman following behind them with Officer Blackmon holding Coleman's arms behind his back. As the group of four approached the exit, Officer Smith allegedly saw and felt Coleman tugging on his gun (Smith Dep. 55:9–13). In response, Officer Smith let go of Stanley and turned around to face Coleman, first striking Coleman in the chest and then grabbing his throat area and exclaiming "if you reach for my gun again, I'll fucking kill you." (Coleman Dep. 42:4–5.) Coleman replied, "I can't reach for your gun, my hands are behind my back and they're being held by your officer here." (Coleman Dep. 43:14–16.) Another officer, Officer Abraham, then stepped between Coleman and Officer Smith and suggested that Officer Smith finish escorting Stanley out of the stadium. Officer Smith then struck Coleman again in chest area, grabbed him in the throat area, and then walked him, in a headlock, to a holding area at the stadium. (Abraham Dep. 23:1–15.) Officer Abraham's testimony is that the two chest

strikes and chokes occurred sequentially, with no pause in events. (Abraham Dep. 24:9–11.) The court notes that Coleman's version of events includes no mention of a chest strike and describes only a single choke. (Coleman Dep. 41:23–43:19.)

From the holding area, Coleman was placed in a police van and taken to the Alvin S. Glenn Detention Center. Coleman was charged with public disorderly conduct, and released from the detention center the following Friday morning on a personal recognizance bond. The criminal charge was later dismissed.

Officer Smith denies choking Coleman, or wrapping either of his hands around Coleman's throat. Rather, he asserts that his interaction with Coleman consisted of striking Coleman's chest and grabbing him by the collar of his shirt. (Smith Dep. 57:5–13.) Officer Smith also asserts that after the initial open-hand strike and collar grab, Coleman lunged at him, and that he appropriately responded by grabbing Coleman and taking him to the holding area. (Smith Dep. 61:14–18, 62:2–11.)

Coleman filed this case in South Carolina state court on September 25, 2008, asserting a claim of excessive force pursuant to 42 U.S.C. § 1983, and a state law claim of battery against Officer Smith. Coleman asserts gross negligence against Richland County for negligent training and supervision. Officer Smith and Richland County removed the case to this court on the basis of federal question jurisdiction on November 3, 2008.

II.  Discussion

    A.  Constitutionally Excessive Force Pursuant to 42 U.S.C. § 1983

The alleged application of excessive force by Officer Smith occurred during the course of the seizure of Coleman, implicating his Fourth Amendment rights.[1] See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008). In evaluating whether a claim of excessive force was unreasonable under the Fourth Amendment, a court must balance the nature and quality of the intrusion against the importance of the governmental interest alleged to justify the intrusion. Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988). Essentially, the court must assess whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him. Altman v. City of High Point, 330 F.3d 194 (4th Cir. 2006). In aid of this assessment, courts have identified three factors to evaluate the objective reasonableness of the challenged action: (1) the severity of the crime committed by the suspect; (2) whether the suspect presents an immediate threat of safety to the police officers or others; and (3) whether the suspect is actively resisting arrest. Wilson v. Flynn, 429 F.3d 465, 467 (4th Cir. 2005).

Fourth Circuit caselaw imposes an additional requirement that a plaintiff sustain injuries of more than a de minimus nature to prevail on a § 1983 claim for excessive force in the Fourth Amendment context. See Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir.

---

[1] The Court notes that the "[t]he point at which the Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." Orem, 523 F.3d at 446. Based on the facts in the record, Coleman was not under arrest, nor, prior to the alleged use of force, is it likely that he would have been arrested. Rather, the facts suggest a fluid situation precluding the court from finding the seizure complete. Also, at the hearing on this motion, the parties both asserted their shared belief that the Fourth Amendment applied to the facts at hand. In any event, even if the Fourteenth Amendment were to apply, the lack of more than de minimus injury would prevent Coleman from recovering on his excessive force claim.

1999) (finding no excessive force where tight handcuffs and a push of the plaintiff's leg constituted extent of injury). When assessing the character of a de minimus injury, albeit in the Fourteenth Amendment context, the Fourth Circuit has held that "temporary swelling and irritation is precisely the type of injury this court considers de minimus." Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); see also Stanley v. Hejirika, 134 F.3d 629, 637–38 (4th Cir.1998) (holding that "bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted de minimus injury); Cox v. Gaskins, 2003 WL 23857306, at *2 (E.D.N.C. May 30, 2003) (finding that two lacerations to plaintiff's head and an injury to his nose were de minimus injuries).

       1.       Coleman Appears to Have Suffered De Minimus Injuries

Coleman sought medical treatment at the detention center, however he was released without treatment after consultation. (Coleman Dep. 49:25–50:23.) Coleman contends that his injuries include bruises and temporary pain to his neck. Accordingly, from the facts in the record, it would appear that the injuries Coleman received do not rise above the standard set forth in Taylor, and his claim of excessive force is therefore not cognizable under the Fourth Amendment pursuant to Carter.[2] See Taylor, 155 F.3d 479, Carter, 164 F.3d 215, 219 n.3.

---

[2] To the extent that Coleman seeks to rely on the court's decision in Williams v. Smith et al., C/A No. 3:08-2841, 2009 WL 4729975 (D.S.C. 2009) his argument misses the mark. Williams involved the use of a taser on an allegedly immobilized suspect and relied solely on the Fourth Circuit's holding in Orem v. Rephann, 523 F.3d 442 (4th Cir. 2008), which held that the application of a taser on its own may rise above the de minimus injury threshold. The facts at hand materially differ from those in Williams.

5

B.  Qualified Immunity

The court found above that Coleman failed to state a claim for excessive force under the Fourth Amendment due to his de minimus injuries. However, the court finds that even if Coleman stated a claim upon which relief could be granted, Officer Smith would be entitled to qualified immunity.

The availability of qualified immunity for a police officer sued under 42 U.S.C. § 1983 turns on whether in performing discretionary functions, he engaged in conduct that violated "clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Immunity may thus be established either on the basis that the right allegedly (or actually) violated was not at the time one 'clearly established,' or that though 'clearly established' (and violated), it was one that a 'reasonable' person in the officer's position could have failed to appreciate would be violated by his conduct." Pritchett v. Alford, 973 F.2d 307 (4th Cir. 1992).

Accordingly, ruling on qualified immunity involves a three part test: (1) identification of the specific right violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). The first two prongs of the analysis are pure legal questions for the court. The third prong focuses on whether the officer would have known that his conduct would violate the right in question based on information

actually possessed at the time, or then reasonably available to the officer. Id. Accordingly, qualified immunity provides a defense to good faith mistakes of judgment "traceable to unsettled law, faulty information, or contextual exigencies," id. at 313, and lends protection to "'all but the plainly incompetent or those who knowingly violate the law' in order to avoid undue inhibitions in the performance of official duties." Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The purpose of qualified immunity is not solely to shield officers from liability, but also from the burdens of litigation; in pursuit of these aims, assessing the applicability of qualified immunity is encouraged at the summary judgment stage. See Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982).

The parties concede that the Fourth Amendment prohibits the unreasonable use of force in effecting a seizure and that the right to be free from excessive force was clearly established at the time of the alleged application of force. Accordingly, the court must determine whether Officer Smith's actions at the time of the alleged application of force were reasonable in light of the facts known to him at the time.

At the time of the alleged application of force, Coleman was walking directly behind Officer Smith in a crowded area beneath the student section stands at a college football game. Many game attendees were leaving the stands to retrieve refreshments and the band was preparing to take the field through a nearby corridor and creating a disturbance. (Smith Dep. 54:8–11.) From all accounts, the scene was chaotic and crowded. While making their way

7

through the crowd, Officer Smith testified that he believed Coleman attempted to acquire his weapon. (Smith Dep. 55:9–13.) Coleman's testimony reflects Officer Smith's perception, mistaken or otherwise, that Coleman had attempted to obtain his weapon. (Coleman Dep. 42:14–15.) Taking the facts in the light most favorable to Coleman, Officer Smith's action of striking and briefly choking Coleman while he was being held by Officer Blackmon does not appear to be the best possible response, but the best possible response is not what was required. Altman v. City of High Point, 330 F.3d 194 (4th Cir. 2003). Officer Smith, whether mistakenly or not, perceived Coleman attempt to take his sidearm. In light of the crowded concourse and chaotic atmosphere endemic at a college football game, Officer Smith's perception compelled a swift response to the perceived threat. The danger of a suspect taking control of an officer's weapon at a crowded football game would be difficult to overstate. To the extent that Coleman argues that Officer Smith's response was unreasonable, and that no reasonable officer would have responded in that manner, the court disagrees. Officer Abraham, who observed the alleged use of force, testified in his deposition that he considers strong action necessary and even deadly force fair game should a suspect attempt to wrest away his weapon. (Abraham Dep. 41:3–11.) Officer Smith's conduct does not approach that contemplated as reasonable by Officer Abraham and the court notes again that Coleman suffered no more than de minimus injury, which supports an inference of de minimus force. Accordingly, the court finds that Officer Smith's conduct does not fall outside that protected by qualified immunity. The contextual exigencies of the

situation and Officer Smith's belief that Coleman was going for his gun justified his response and violated no bright line.

III.     Conclusion

For the foregoing reasons, Officer Smith's motion for summary judgment is granted as to Coleman's § 1983 claim against Officer Smith.  Pursuant to 28 U.S.C. § 1367(c)(3) the court declines to exercise supplemental jurisdiction over the remaining state law claims against Officer Smith and Richland County.  Accordingly, the state law claims against Officer Smith and Richland County are dismissed without prejudice.[3]

IT IS SO ORDERED.

February 11, 2010                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge

---

[3] Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of at least thirty days after dismissal.